IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Case No. 5:18-cr-00021 |
| | ) |
| ANGEL ORLANDO VASQUEZ FLORES | ) |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is defendant Angel Orlando Vasquez Flores's motion to dismiss the indictment. (Dkt. No. 49.) Vasquez Flores, a citizen of Honduras, is charged in this case with a violation of 8 U.S.C. § 1326, which requires the government to prove that he had previously been deported or removed from the United States. *United States v. El Shami*, 434 F.3d 659, 663 (4th Cir. 2005). He seeks to dismiss the indictment on the grounds that the immigration court that ordered his deportation lacked subject-matter jurisdiction and thus that order was void *ab initio*. Specifically, he argues that the immigration court only obtains jurisdiction when a valid Notice to Appear (NTA) is issued and, relying on *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), he argues that his NTA was not valid to confer jurisdiction because it did not provide a specific date, time, and place for him to appear.

Defendant's motion raises a number of interrelated issues which, as counsel for both parties acknowledged at a hearing, have not been directly addressed by the Fourth Circuit and on which district courts have expressed differing views. For the reasons set forth herein, the court concludes that the NTA—standing alone—was insufficient to serve as a charging document. At the very least, the court will assume that is true for purposes of this opinion. Regardless, the court does not believe that the deficiency in the NTA resulted in a lack of subject-matter jurisdiction such that the order was void *ab initio*.

The court further concludes that, in order for Vasquez Flores to challenge the deficiency in the NTA as part of this criminal proceeding, he must satisfy the three requirements set forth in § 1326(d). The court finds, however, that he cannot satisfy the third requirement. For these reasons, discussed below, the court will deny the motion to dismiss the indictment.

## I. BACKGROUND

Vasquez Flores is charged in a single-count indictment with illegal reentry after deportation, in violation of 8 U.S.C. § 1326. The deportation referenced in the indictment occurred in 2011. Specifically, on November 1, 2011, Vasquez Flores, who then was being held at Middle River Regional Jail, was served with a warrant for arrest of an alien. On the same date, Vasquez Flores was transported to Harrisonburg, Virginia, and served with an NTA, but that NTA did not contain a set hearing date or place, which was, and is, a common occurrence. The record is silent as to whether he subsequently received a Notice of Hearing. He was then detained in the custody of Homeland Security and remained in that custody (in several different locations) until he appeared before an immigration court in York, Pennsylvania, on November 23, 2011, and was ordered removed.

Although the order signed by the immigration judge (IJ) has the word "Waived," indicating that Vasquez Flores waived his right to appeal (Dkt. No. 51-4), the audio recording of the proceedings does not reflect that his appeal rights were discussed or waived. Nonetheless, he did not appeal from the deportation order. He was removed from the United States on December 16, 2011, pursuant to a "Warrant of Removal/Deportation." Then, on August 8, 2018, he was found in the United States and subsequently indicted in this case.

The audio recording of Vasquez Flores's 2011 immigration proceeding is part of the record before this court. The recording lasts approximately eight minutes, and it contains the

2

exchange between the IJ and Vasquez Flores, through his interpreter. Some portions of it are emphasized by the parties and worth noting. After Vasquez Flores confirmed that he was not legally present in the United States, the IJ asked him if he would voluntarily leave the United States if ordered to do so. Vasquez Flores said he would. The IJ told him that the fine was $5,000 and asked if anyone could pay that for him. He told the IJ that he had no money; it would have to be less. Then the IJ asked whether his girlfriend or anybody else would be willing to buy him an airline ticket to leave, and Vasquez Flores said no. Thereafter, the IJ ordered his deportation back to Honduras. The IJ then asked if he had any questions, and Vasquez Flores responded that he could pay a lower bail. The IJ told Vasquez Lopez he was not going to give a lower bail and now that the deportation order had been signed, "you don't have a bail at all." The IJ then concluded with "Good luck to you," and the recording ends.

For purposes of the motion before the court, there are two significant aspects of that recording. First, Vasquez Flores twice informed the IJ that he had some unknown amount of funds available to him. Vasquez Flores argues that this supports his assertion that the IJ should have allowed him to voluntarily depart, rather than being removed, and that if he had appealed the order of removal, he could have been given the opportunity to voluntarily depart. Critically, a voluntary departure does not qualify as a removal or deportation under 8 U.S.C. § 1326. Second, and as the United States concedes, the recording does not contain any discussion by the IJ concerning Vasquez Flores's rights to appeal from his deportation order, nor does it contain any statement by Vasquez Flores that he was waiving his appeal rights.[1]

---

[1] At the hearing, the United States noted that Vasquez Flores signed the NTA, which contains a short section, in English, advising him of his rights to appeal (Dkt. No. 51-2, at 2). For purposes of the current motion, though, the United States concedes that, if it were required to prove a waiver by clear and convincing evidence—as other circuits have required—it could not do so. (Draft Tr. Jan. 3, 2019 Hr'g, p. 24.)

## II. DISCUSSION

### A. Parties' Arguments

As noted, Vasquez Flores's primary argument, relying on *Pereira*, is that the NTA is invalid because it failed to specify a date and time for his hearing. From there, he argues that because the NTA is the charging document in an immigration case and it confers jurisdiction on the immigration court, an invalid NTA means that the immigration court never had subject-matter jurisdiction. He then relies on cases in other contexts in which courts held that any "ultra vires" orders from agencies or orders from a tribunal without subject-matter jurisdiction are void *ab initio*. Accordingly, he contends that this lack of subject-matter jurisdiction alone is enough to dismiss the indictment because, without any valid order of removal, he cannot be convicted under 8 U.S.C. § 1326(a). As an alternative argument, he asserts that, even if he were required to satisfy the three § 1326(d) requirements for a collateral challenge to a deportation order, he can do so.

The United States responds that *Pereira*'s holding is narrow and limited to its context, and, as such, the NTA here was valid to confer jurisdiction on the immigration court under the regulations governing NTAs as charging documents. It further argues that, even if the NTA was invalid, that does not result in a loss of *subject-matter* jurisdiction, so as to render the order necessarily void *ab initio*. Finally, it argues that, no matter how Vasquez Flores's challenge is characterized—and even if it is considered a challenge to subject-matter jurisdiction—he must still satisfy the three § 1326(d) requirements in order to raise that challenge in this criminal proceeding. He cannot do so, according to the United States.

Since *Pereira*, a number of district courts have grappled with motions similar to the one before the court. Notably, each side's arguments (or portions of them) can find support in some

4

of those decisions, many of which are cited in the parties' briefing. The court has reviewed many of those cases and has also considered some cases decided after the briefing or hearing in this case, several of which are cited herein.

## B. *Pereira* and Its Application

*Pereira* was an immigration appeal that involved a statutory remedy known as cancellation of removal and application of the "stop-time rule." That cancellation is available to some nonpermanent residents who have "been physically present in the United States for a continuous period of not less than 10 years." 8 U.S.C. § 1229b(b)(1). The "stop-time rule" provides that the period of continuous physical presence is deemed to end "when the alien is served a notice to appear under section 1129(a) of this title." § 1229b(d)(1). In *Pereira*, the Supreme Court acknowledged an INA regulation that required a time and place to be included only "where practicable," 138 S. Ct. at 2111, but it refused to allow that regulation to trump the plain language of the statute describing the contents of an NTA. Instead, the Supreme Court held that an NTA that does not specify when and where the removal hearing will take place "is not a 'notice to appear under 1229(a)' and therefore does not trigger the stop-time rule." *Id.* at 2110.

Although the *Pereira* Court described the question before it as a "distinct" one that included a reference to the stop-time rule, *id.* at 2118, its reasoning and the language used elsewhere in the opinion suggest that an NTA under § 1229(a) is categorically deficient absent a time and place for the hearing, and that it was applying that general holding to the stop-time rule. *See, e.g., id.* at 2116 ("[W]hen the term 'notice to appear' is used elsewhere in the statutory section, including as the trigger for the stop-time rule, it carries with it the substantive time-and-

5

place criteria required by § 1229(a)). Thus, it appears that the holding is applicable outside the narrow scope of the stop-time rule.[2]

Nonetheless, the United States argues that the Supreme Court's decision in *Pereira* turned on the explicit reference in the § 1229b(d)(1)(A) "stop-time rule" to § 1229(a)'s definition of what constitutes a "notice to appear." Unlike the "stop-time rule," its argument continues, the regulations governing the vesting of jurisdiction in an immigration court do not expressly reference § 1229(a)'s definition of a "notice to appear." *Compare* 8 C.F.R. §§ 1003.14–1003.15 *with* 8 U.S.C. § 1229b(d)(1). Instead, the regulations concerning jurisdiction do not contain any reference to § 1229(a). From this, the United States argues that *Pereira* is inapplicable here. This reasoning finds support in some district court decisions. *See, e.g.*, *United States v. Romero-Caceres,* No. 1:18-CR-354, 2018 WL 6059381, at *7 (E.D. Va. Nov. 19, 2018) ("*Pereira*'s holding, which interpreted and applied § 1229(a), cannot be extended to modify the regulatory framework governing the immigration court's jurisdiction."); *id.* at *8 n.13 (collecting authority that "rejected defendant's jurisdictional challenge . . . and declined to extend *Pereira*" and contrary authority holding that an NTA without time and place information did not "vest jurisdiction" in the immigration court).

---

[2] The mere fact that the Supreme Court's decision contains no indication that it is specifically intended to apply in the context of § 1326 prosecutions does not mean that its language and reasoning does not support its application in that context. *See United States v. Cruz-Jimenez*, No. A-17-CR-00063-SS, 2018 WL 5779491, at *6 n.3 (W.D. Tex. Nov. 2, 2018) (noting the government's argument that it is implausible that the Supreme Court intended for *Pereira* to apply to the removal proceedings that form the basis for illegal reentry prosecutions because if it had "intended a sea change in the criminal prosecution of individuals who illegally reenter the country, it would have said so," but rejecting that argument and reasoning that the court must "follow the directives of the Supreme Court's opinion in *Pereira* rather than its possible intentions"), *appeal docketed*, No. 18-50943 (5th Cir. Nov. 8, 2018).

This court respectfully disagrees with such a narrow interpretation of *Pereira*, primarily because that interpretation makes sense only if the court were to allow a regulation's definition or requirements to effectively trump a statutory definition that was enacted *after* the regulation.

It is true that *Pereira* did not address the immigration court's underlying jurisdiction. It is likewise accurate that the regulations that discuss the vesting of jurisdiction with the immigration court, although they reference an NTA as a possible charging document, do not explicitly incorporate § 1229(a)'s definition. *See* 8 C.F.R. § 1003.13–1003.15. Specifically, 8 C.F.R. § 1003.13 identifies an NTA as a document that can be a charging document, but it contains no express reference to § 1229(a). Section 1003.14(a) merely explains that "[j]urisdiction vests . . . when a charging document is filed with the Immigration Court." And Section 1003.15(c) lists the contents of an NTA for removal proceedings, but does not include the time and place of the hearing as being required. Similarly, Section 1003.18(b) requires time and place information only "where practicable."

But the only *statutory* definition of an NTA, § 1229(a)—the very provision addressed in *Pereira*—*does* require that the time and place of the hearing be included. A regulation elsewhere applying the same statutory scheme cannot do an end-run around the only definition of an NTA *in the statute*, simply by failing to include a reference to that statutory definition or pointing to a different definition contained elsewhere in the regulations. *United States v. Rivera Lopez*, __ F. Supp. 2d __, No. 1:18-cr-381, 2018 WL 6834363, at *6 (E.D. Va. Dec. 28, 2018).

The *Rivera Lopez* court explained this principle well:

> [T]he Court concludes that where the INA's implementing regulations require a "notice to appear," that notice must satisfy the statutory requirements laid out in § 1229(a). Although Congress is free to establish a requirement in one statutory provision and disregard that requirement in another, the executive branch is not

7

> similarly entitled to sweep an explicit statutory requirement to the side. To the contrary, the regulatory authority delegated to the Attorney General allows him only "to fill any gap left, implicitly or explicitly, by Congress." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984) (citation omitted). Before the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") went into effect in April 1997, removal proceedings were initiated through the filing of an "order to show cause"; although immigration authorities were permitted to include the time and place of the hearing in the order to show cause, they were not required to do so. *See United States v. Mendez Fernandez*, No. 1:18-cr-00307, __ F.Supp.3d __, __, 2018 WL 5929632, at *2–3 (E.D. Va. Nov. 13, 2018). In light of this history, it is clear that the regulations' system of providing the time and place of the hearing only "where practicable" was an attempt to restore the pre-IIRIRA flexibility given to immigration authorities. That attempted revision is inconsistent with the INA and with the separation of powers more generally, and it is without effect.

*Id.* This court finds the above analysis persuasive.

At the same time, though, the court recognizes that in a brief, unpublished decision, issued several weeks after *Rivera Lopez*, the Fourth Circuit summarily rejected *Pereira*'s application to jurisdictional issues in denying a petition for review and adopted the B.I.A.'s post-*Pereira* position on this issue:

> Relying on the Supreme Court's decision in *Pereira v. Sessions*, __ U.S. __, 138 S. Ct. 2105 (2018) (holding that a notice to appear that fails to designate specific time or place of removal proceeding does not trigger "stop-time rule" ending alien's continuous presence period for purposes of cancellation of removal), [the petitioner] also contends that the agency did not have jurisdiction over his removal proceedings. We conclude that the narrow holding of *Pereira* does not apply in this situation. *See Mauricio-Benitez v. Sessions*, 908 F.3d 144, 148 n.1 (5th Cir. 2018) (stating that "[b]ecause the issues in this case pertain only to reopening, Pereira's rule regarding cancellation is inapplicable" and citing district court cases holding that Pereira does not apply where the "stop-time rule" applicable to cancellation of removal is not involved); *In re Bermudez-Cota*, 27 I. & N. Dec. 441, 447 (B.I.A. 2018) ("[A] notice to appear that does not specify the time and place of an alien's initial removal hearing vests an Immigration

8

> Judge with jurisdiction over the removal proceedings and meets
> the requirements of [8 U.S.C. § 1229(a) (2012)], so long as a
> notice of hearing specifying this information is later sent to the
> alien.").

*Leonard v. Whitaker*, 746 F. App'x 269, 269–70 (4th Cir. Dec. 31, 2018).

While *Leonard*, an unpublished disposition, is not binding on this court, it does provide some authority from the Fourth Circuit suggesting that *Pereira* would not affect the jurisdiction of the immigration court in this case. *Leonard* is also consistent with at least one published decision of another court of appeals. Specifically, the same sort of "middle ground" position was espoused by the Sixth Circuit in an immigration appeal decided after *Pereira*, *Hernandez-Perez v. Whitaker*, 911 F.3d 305 (6th Cir. 2018). There, the court concluded that *Pereira* was "an imperfect fit in the jurisdictional context." 911 F.3d at 314. The Sixth Circuit thus reaffirmed the pre-*Pereira* conclusion by it and "all our sister circuits"—although no citation to a Fourth Circuit case was included—that "jurisdiction vests with the immigration court where, as here, the mandatory information about the time of the hearing . . . is provided in a Notice of Hearing issued after the NTA." *Id.* at 314–15.

It is not clear to the court that the rule set forth in *Leonard*, *Hernandez-Perez*, and the B.I.A.'s decision in *In re Bermudez-Cota* would apply directly here. Indeed, neither party in this case has advocated this position, and neither party has referenced or attached as an exhibit a notice of hearing provided to Vasquez Flores.

In any event, even assuming that *Pereira* would apply and render the NTA defective here, that fact does not inevitably lead the court to conclude that the immigration court lacked jurisdiction, thereby rendering the order of removal void *ab initio*. Defendant contends that because the service of an NTA is the act that vests jurisdiction with the immigration court, 8

9

C.F.R. § 1003.14(a), a deficient NTA means that the court is without *subject-matter* jurisdiction. For support, he relies heavily on the Fourth Circuit's unpublished decision in *Shogunle v. Holder*, 336 F. App'x 322, 324–25 (4th Cir. July 8, 2009). There, the court held that where the Department of Homeland Security had not filed the notice to appear with the immigration court before the petitioner appeared at a hearing, nothing the court ordered at that hearing had any effect.

Defendant's reliance on *Shogunle* is misplaced. First of all, *Shogunle* was factually different: in this case a document at least purporting to be a notice to appear was filed with the immigration court, although it was defective, as the court has explained above. *Shogunle*, moreover, did not use the term subject-matter jurisdiction. Also, while its reasoning seems to suggest something akin to subject-matter jurisdiction in federal courts, that notion is undercut by a more recent unpublished decision of the Fourth Circuit, which involved a § 1326(a) prosecution.

Specifically, in *United States v. Perez-Arellano*, __ F. App'x __, No. 18-4301, 2018 WL 6617703 (4th Cir. Dec. 17, 2018), the court addressed defendant's argument under *Pereira* that the immigration judge lacked jurisdiction to enter a removal order because his NTA failed to state the date and time of the removal hearing. The court reasoned that the defendant had waived any challenge to the validity of the proceeding where he "knowingly and voluntarily conceded his removability and relinquished a host of rights, including his right to be present at, or even have, a removal hearing." *Id.* at *3. Thus, the case suggested that the same defect raised here could be waived.[3]

---

[3] The *Perez-Arellano* court also rejected the underlying premise—that *Pereira* means an immigration court lacks jurisdiction over a removal proceeding triggered by an NTA without a specified hearing time or place—

As Vasquez Flores points out, however, subject-matter jurisdiction cannot be waived. Thus, it is not at all clear to the court that the species of "jurisdiction" referenced in both *Shogunle* and *Perez-Arellano* is subject-matter jurisdiction. The *Rivera Lopez* court explained in some detail why it did not find a deficient NTA to result in a lack of *subject-matter* jurisdiction, citing several persuasive reasons for its conclusion, and the court again agrees with its reasoning. *Rivera Lopez*, 2018 WL 6834363, at *6–7. In part, this turns on the nature of subject-matter jurisdiction in federal courts, which necessarily renders orders from a court lacking it void. The explanation of the *Rivera Lopez* court on this point is worth quoting at length:

> [D]efendant's reliance on cases involving the subject-matter jurisdiction of the federal courts, *see, e.g.*, Def. Mot. to Dismiss Indictment [Dkt. No. 22] 10 ("[A]ny action by a court without subject-matter jurisdiction is 'ultra vires' and therefore void." (quoting *United States v. Hartwell*, 448 F.3d 707, 715 (4th Cir. 2006)), is misguided. The metes and bounds of a federal court's subject-matter jurisdiction are governed by the Constitution's vesting of the federal judicial power, *see* U.S. Const. art. III, § 2, and by congressional grants of jurisdiction, *see, e.g.*, 28 U.S.C. § 1331. By analogy, an agency's subject-matter jurisdiction would stem from congressional grants of authority to act in a particular arena. Yet in this case defendant relies not on a congressional limitation, but rather on a regulation promulgated by the agency itself. In that sense, section 1003.14(a) is more akin to a federal court's local rules, which (like the regulations at issue here) are the product of congressionally delegated gap-filling authority, *see* Fed. R. Civ. P. 83(a)(1), but which in no way affect the federal court's subject-matter jurisdiction. Accordingly, the best reading of section 1003.14(a) is that although it imposes a procedural requirement on immigration authorities' initiation of removal proceedings, that requirement is not "jurisdictional" in the formal sense, and a defect in a notice to appear does not necessarily render a resulting deportation order void *ab initio*.

---

although it did so on plain error review. *Id.* at *3 ("We disagree with Perez-Arellano's assertion that the district court erred at all, much less plainly erred. Simply put, *Pereira* did not address the question of an [IJ's] jurisdiction to rule on an alien's removability, and it certainly does not plainly undermine the jurisdiction of defendant's removal proceedings.").

*Id.* at *7.

The court agrees with this reasoning. It thus concludes that, even though the court assumes, under *Pereira*, that the NTA was defective, that defect did not result in the immigration court's lacking subject-matter jurisdiction nor its orders being rendered void *ab initio*.

In light of this ruling, the court will next consider whether Vasquez Flores has satisfied the requirements in 8 U.S.C. § 1326(d) for collaterally attacking a deportation order.[4]

**C. Section 1326(d)**

To succeed on his collateral attack of his prior deportation order, Vasquez Flores must satisfy the following three requirements of § 1326(d): (1) he exhausted any administrative remedies through which he could have challenged the order in the deportation proceeding (or was excused from the exhaustion requirement); (2) the deportation proceedings at which the order was issued improperly deprived him of judicial review (or he was excused from seeking judicial review); and (3) the entry of the deportation order was fundamentally unfair. *United States v. El Shami*, 434 F.3d 659, 663 (4th Cir. 2005) (citing *United States v. Wilson*, 316 F.3d 506, 509 (4th Cir. 2003), *abrogated on other grounds by Lopez v. Gonzales*, 549 U.S. 47 (2006)). The third element—that the order be fundamentally unfair—requires a showing of deficiencies that amount to a due process violation *and* that actual prejudice resulted. *El Shami*, 434 F.3d at 665. "Specifically, [Vasquez Flores] must show that, but for the errors complained of, there was a reasonable probability that he would not have been deported." *Id.* If he satisfies all three requirements, the illegal reentry charge must be dismissed as a matter of law. *Id.* at 663.

---

[4] There are a number of courts that have required a defendant to satisfy the § 1326(d) factors after either finding or assuming that subject-matter jurisdiction is lacking, although the Fourth Circuit has not issued a decision on the issue and there are courts that have held to the contrary. (*See* U.S. Opp'n to Mot. Dismiss 6 n.2, Dkt. No. 51 (collecting authority).)

As defendant notes, "while the deportation order signed by the judge has the word 'waived' circled with respect to appeal, the judge never mentioned the appeal rights, determined whether he had received a copy of his appeal rights, or questioned whether he wanted to appeal." (Dkt. No. 58 at 1.) Moreover, as noted *supra* at note 1, the United States has conceded that it cannot establish waiver by clear and convincing evidence. Based on this, the court concludes that the first two prongs of the test are satisfied, related to exhaustion of administrative remedies and judicial review. *See United States v. Mendoza-Lopez*, 481 U.S. 828, 840 (1987).

Thus, whether or not Vasquez Flores may challenge the removal order here turns on whether he can satisfy the third requirement of § 1326(d). Vasquez Flores argues two different bases for establishing "fundamental unfairness." The first hinges on his subject-matter jurisdiction argument. Specifically, he argues that the deficient NTA did not confer jurisdiction on the immigration court, and, had the IJ correctly found that he did not have jurisdiction, Vasquez Flores would not have been ordered removed.[5] For the same reasons that the court has already discussed, it concludes that the immigration court did, in fact, have subject-matter jurisdiction. Thus, this argument cannot form the basis for Vasquez Flores's satisfaction of the third § 1326(d) requirement.

His second ground of prejudice is connected not to the NTA, but to the failure of the IJ to advise him of his appellate rights. Specifically, he argues that, had he been properly advised of his appeal rights, he could have appealed. On appeal, his argument continues, there was a "reasonable probability that he would not have been deported" but would have been allowed to

---

[5] Vasquez Flores does not argue that the deficient NTA itself, through its failure to specify a date, time, and place, itself gave rise to a separate due process violation, nor could he. He appeared for the hearing and thus had both notice and an opportunity to be heard. *See El Shami*, 434 F.3d at 665 (explaining that an alien's fundamental right to due process requires notice of the charges against him, a hearing, and a fair opportunity to be heard).

voluntarily depart instead.  He focuses on the fact that he told the IJ he was willing to depart and could pay a lesser fine than $5,000, and that the IJ could have imposed only a $500 fine.  With a lesser payment, he contends, there is a reasonable probability that he could have paid that amount and had money left over for a plane ticket, and so the Board of Immigration Appeals would have allowed him to voluntarily depart.

As noted previously, to establish the third requirement of § 1326(d)—fundamental unfairness—Vasquez Flores must show that his due process rights were violated by defects in his underlying deportation proceeding and that he suffered prejudice as a result of the defects.  *El Shami*, 434 U.S. at 565.  The court assumes, without deciding, that the failure to advise him of his appeal rights constituted a due process violation.  But he still must show prejudice.

The court has carefully considered the parties' arguments on the issue of prejudice, which were fleshed out during the hearing.  This included a threshold dispute about the appealability of the denial of voluntary departure, governed by 8 U.S.C. § 1229c, and appeals therefrom, which are limited to some degree by 8 U.S.C. § 1229c(f).[6]  The court assumes, for purposes of this opinion and in defendant's favor, that the IJ determined that Vasquez Flores did not qualify under the last prong of the statute allowing voluntary departure, a ruling that would be appealable to both the BIA and to a federal court.[7]

---

[6] It is not clear to the court whether the government is arguing that the IJ's decision was not appealable to the Board of Immigration Appeals (BIA), but clearly, the parties dispute the appealability of any BIA ruling to a court, due to limitations imposed by 8 U.S.C. § 1229c(f).

[7] The other option—more favorable to the United States—is that the IJ found Vasquez Flores had the means to depart, but exercised his discretion to deny voluntary departure.  At least some circuits have held that, under the Real ID Act of 2005, courts have appellate jurisdiction over questions of law in denials of discretionary relief (such as statutory eligibility), but do not have jurisdiction over a decision based purely on an IJ's discretion.  *See, e.g.*, *Corro-Barragan v. Holder*, 718 F.3d 1174, 1176–77  (9th Cir. 2013) (explaining the distinction).  Thus, interpreting the IJ's decision as a discretionary one could render it immune from judicial review and thus invalidate any claim of prejudice.  In light of the court's conclusion that Vasquez Flores cannot show prejudice, the court will assume the option more favorable to Vasquez Flores on this threshold issue of the availability of judicial review.

The court nonetheless does not find a "reasonable probability" that, had he appealed and raised the issue, he would have been allowed to voluntarily depart. To show an entitlement to voluntary departure, Vasquez Flores had to "establish[] by clear and convincing evidence that [he] has the means to depart the United States and intends to do so." 8 U.S.C. § 1229c(b)(1)(D). This is a burden that he does not have a reasonable probability of establishing based on the record. First of all, while he indicated that he could pay less than a $5,000 bond, he did not indicate how much he could pay and certainly did not state that he could pay the minimum bond the IJ could have imposed, which was $500. 8 C.F.R. § 1240.26(c)(3). Rather, at one point he stated that he had *no* money. Perhaps more significantly, though, he unequivocally told the judge that no one would pay for his ticket back to Honduras. Based on the record before the IJ, then, there was no evidence that he had the means to depart, let alone clear and convincing evidence. To the contrary, the evidence was primarily that he did not have such means. Accordingly, he has not shown a "reasonable probability" that the result on appeal would have been different. He therefore fails to establish that his prior order of deportation was invalid.

III. CONCLUSION

For the foregoing reasons, the motion to dismiss the indictment (Dkt. No. 49) is DENIED.

The clerk is directed to send a copy of this order to all counsel of record.

Entered: January 25, 2019.

/s/ *Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge

15